We're all here. The next case this morning is U.S. v. McGill. Ms. Winslow. Good morning, Your Honor. May it please the Court, Counsel, I'm Heather Winslow on behalf of the appellant and defendant in this case, Mark McGill. On February 23rd, 2017, Mr. McGill was on supervised release for the offense of possession of child pornography. At around 11 o'clock that morning, his probation officer paid him a visit. And during that visit, he saw an additional cell phone. What I mean by additional cell phone is that the conditions of Mr. McGill's supervised release require that he identify and register all cell phones that he used. The probation officer asked for the cell phone. Mr. McGill provided him the cell phone with the explanation, I just use it to charge my phone. It's the same type of phone. It had the same type of battery. Mr. McGill's probation officer did not believe that explanation, and he seized the telephone. He tried not to show the telephone to him. That's the government's permission. That's the government's position that he sort of moved his body in front of it. The room that Mr. McGill rented at the time was very small. So whether or not he was actually moving to stand in front of it, or just simply moving so he could breathe, I think is an open question. We don't just have the government and the defendant, we have the district court. And the district court made findings that you have to establish are clearly erroneous, do you not? That's absolutely correct, Ron. That's absolutely correct. And to that end, we had an evidentiary hearing. We had a lengthy evidentiary hearing, as a matter of fact. Judge Gottschall ultimately didn't rely so much on the movement of the body movements as she relied on old previous violations of Mr. McGill's supervised release. And what I mean by that is, according to the court, the court concluded that while he was on supervised release, Mr. McGill falsely testified or falsely stated to a polygrapher that he had not looked at any child pornography or other sexually inappropriate and sexually stimulating material. Now, why I express some concern about that finding is that that finding was based on the testimony of Officer Williams. Officer Williams, his notes and his other observations and reports became a significant point of contention throughout the case. Officer Williams failed to properly record a failure of the polygraph exam. So where there is a contention that Mr. McGill failed a polygraph exam, it's almost contradicted by the fact that at no time, at no time prior to this being suddenly raised at the very end of the evidentiary hearing, was there anything made of it? We were not brought before the court to have a discussion about increasing supervision. There was no discussion about additional counseling, and there were no records made of such a failure in Officer Williams report. That's very concerning for obvious reasons. And as the district court made its findings, that was sort of forefront in, I think, all of the party's minds that there was a lack of evidence, or at least a substantial contradiction in evidence, which would render a finding that Mr. McGill failed those polygraphs unreliable. Does that answer your question, Mr. Judge Brennan? Judge Kagan. Oh, I'm sorry. Your names are switched. There were a series of prior occasions, but go ahead with your argument. And I'm happy to address all those prior occasions because, as I said, that was one of the biggest causes of concern to at least the defense, is that these are being presented as corroborative of a good faith basis to seize the phone, when in fact they're not corroborative at all. What they are is at best confusing. So I do think that when Judge Kane talks about findings and that we have to overcome, you're not incorrect, but I do believe that those findings are questionable at a number of different levels. The government's initial position was that the phone was seized because it was in plain view. In order for an object to be in plain view and subject to seizure, the law enforcement officer has to be present lawfully, which Officer Williams was. The object has to be contraband in clear sight. In other words, it has to be clearly identified as contraband. You don't have to go into it. You don't have to search it. It's a bag of marijuana. It's a bag of cocaine. It's one of those objects that would allow for easy identification as some sort of contraband. In this case, we do not have that. What we have is a phone, but Mr. McGill was not prohibited from possessing a telephone. He wasn't prohibited from even possessing a phone that probation didn't know about. In fact, it became the subject of some litigation that Mr. McGill had the phone, but that was not, in fact, in violation of his supervised release conditions because those supervised release conditions did not call for him to get rid of all phones that were unknown to probation. In fact, the evidence in this case shows in a previous instance that Mr. McGill had a telephone. That telephone was discovered by the probation department, and at the time it was discovered, he was told to get rid of it or it would be seized. Mr. McGill got rid of the phone, and we press on with the matter. So it's clear, and it's clear from the history of this case, that the Planned Puberty Doctrine, in fact, will not survive the analysis of facts in this case. Mr. McGill had the telephone, but it was not prohibited under his conditions of supervised release. I see that I'm running into my time, my rebuttal time. If your honors have no further questions at this time, I will reserve that time and allow for the government to make their arguments. Thank you. Mr. Rothblatt? Thank you. May it please the court. My name is Richard Rothblatt, and I represent the United States. The district court properly denied defendant's motion to suppress. By the time of the seizure of the unmonitored phone on February 3rd, 2017, the probation officer knew the defendant had previously been convicted of possessing child pornography on an electronic device. Defendant had numerous violations of his conditions of release, including two related to cellular telephones, and defendant was hiding and lying about a mysterious phone that probation wasn't monitoring, and the defendant had not told probation about. Once the unmonitored phone was seized, defendant made a number of incriminating statements about the phone, including that it contained child pornography. The district court correctly found that the unmonitored phone was contraband in plain view, that the probation officer had reasonable suspicion to seize the phone, that the seizure was inevitable, and that the probation officer acted in good faith. I'll begin my argument by focusing on the reason for this. Mr. Rothblatt, can I ask you one question, just based upon your introductory remarks? The reason that you're saying unmonitored phone as opposed to phone, right, is you're doing that deliberately. And the reason you're doing that is because of the condition of supervised release that prevented or that required him to consent to the installation of monitoring equipment or monitoring software on any computer to which he had access. And your position would be that a smartphone qualifies. That's correct, Judge. The condition of release related to the computer and Internet monitoring program, which required defendant to consent, as the court just observed, to the installation of monitoring software on any identified computers. And I think it's the understanding of both defendant and the government and the district court that a smartphone qualifies as a computer under those circumstances. And it's certainly the government's position. No, your adversary was just arguing that what in the world is the problem when the probation officer sees a cell phone? There's no problem with having a cell phone. So I don't know that you can agree to that. I thought your position was it's not any old cell phone. Optically, it looked like a smartphone. And him having smartphones is a problem. It's the government's position that having a smartphone is a problem. If it's not identified to the probation department pursuant to the computer and Internet monitoring program, which would require the defendant to identify all phones capable of connecting to the Internet so that they could be monitored. And in this case, as the court observed, there are two phones. There's an identified phone, a smartphone that the defendant had identified to the probation department, which probation was monitoring his Internet use to prevent recidivism and any issue regarding child pornography and the access of sexual exploitation materials. And then there's this other phone, a smartphone observed by the probation officer on February 3rd, 2017. The probation officer has never heard about this phone before from defendant. And once he observes the phone, the defendant starts acting evasively. And as the court observed previously during its questioning, the district court made very particularized findings with regard to defendant's conduct on February 3rd, 2017. The district court found that his attempts to block the phone were suspicious. He had a drastic change in demeanor. And then he offered a nonsensical excuse for possessing the unmonitored phone. And the nonsensical excuse was that the phone was simply for charging the other phone. But, of course, as the district court observed and as the probation officer testified at the suppression hearing, the unmonitored phone was enclosed in a case, which simply wouldn't be reasonable if it were simply for charging a battery. So all these factors at the time led the probation officer to have reasonable suspicion that the phone itself either was contraband or was involved in criminal activity. It gave him reasonable suspicion to seize the phone. So the possession of the unmonitored phone in and of itself, it's the government's position, rendered it contraband in plain view in light of the computer and Internet monitoring program and its requirements. The district court found also that the totality and circumstances related to the possession of the phone, the prior violations, defendant's criminal history, including possession of child pornography on an electronic device. All those factors combined with defendant's evasive conduct and lies on the morning of February 3rd, 2017, led to the reasonable position of the probation officer that the phone was either contraband in plain view or simply that he had reasonable suspicion to seize it because it was engaging in criminal activity. So the possession of the phone, a long-winded answer, Judge Gutter, is that the possession of the phone was problematic on a number of levels because it hadn't been identified, it wasn't being monitored, and then defendant's conduct on the morning led to reasonable suspicion on the part of the probation officer to seize that phone. With regard to defense counsel's argument that the prior violations simply aren't relevant because they didn't lead to further revisions of defendant's conditions of release, I don't think that's the appropriate inquiry here. The appropriate inquiry is whether or not they led to reasonable suspicion on the part of the probation officer. So the probation officer knew at the time of February 3rd, 2017, as he goes for a home visit of this person, of this probationer who's been previously convicted of possessing child pornography on an electronic device, he knows a number of things. He knows he's got this prior conviction, he knows about these prior violations, including possessing a previously unmonitored phone, and the probation officer had to inform the defendant he could not possess that phone because it could not be monitored by the probation department. That was the very reason defendant couldn't possess it. Furthermore, he understood that defendant had twice violated the conditions of release by downloading sexually stimulating materials. This was a well-known fact by the probation department, and it led to further scrutiny. And he knew that there were two failures of polygraph tests in the past year. So whether or not any of these individualized violations led to a revocation or led to amendment of his conditions of release, there were background factors in the mind of the probation officer as he encountered defendant that day and then observed his evasive behavior, heard his nonsensical explanation for possessing the phone, and led to reasonable suspicion that the phone was contraband and that the phone was possibly linked to criminal activity and justified the seizure. So unless there are any other questions from the panel, the government will rest on its heart. All right, I don't believe so. Ms. Winslow? Your Honor, just two relatively short points. The government points out that certain statements were made by Mr. McGill during the confrontation with Officer Williams. Mr. McGill has denied those statements, for one. He has stated from the beginning that he did not make those statements. And two, the government characterizes those statements as confessions, and we would, of course, disagree with that characterization. But here is the most important part. The most important part is none of that matters. None of those matter because they came to be after the phone was seized. So the determination for this court is whether or not there was either probable, well, reasonable suspicion in this case, which there was not, or whether or not there was some exception to the rule requiring reasonable suspicion. And again, in this case, there was not. Finally, the government states that it's a defense argument that the prior violations are irrelevant, and that's not true. That's not what I said, and that's not what we've ever said. What we've said consistently is that they are unproved. So in terms of allegations, they are unproved allegations that do not bear the credibility that normally a fact finder's determinations would have. I see my time is up. I thank the court for its time. The case is taken under advisement, and we'll move to the fourth case.